1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**O**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MICHAEL DAVID SUTTERLIN,  ) Case No. ED CV 14-0918 JCG
                          )
        Plaintiff,        )
                          )
    v.                    )
                          ) **MEMORANDUM OPINION AND**
CAROLYN W. COLVIN, ACTING ) **ORDER**
COMMISSIONER OF SOCIAL    )
SECURITY ADMINISTRATION,  )
                          )
        Defendant.        )
                          )
                          )
_____)

Michael David Sutterlin ("Plaintiff") challenges the Social Security

Commissioner's decision denying his application for disability benefits.  Two issues

are presented for decision here:

    1.    Whether the Administrative Law Judge ("ALJ") properly evaluated

Plaintiff's credibility, (*see* Joint Stip. at 4-14); and

    2.    Whether the ALJ properly developed and considered the vocational

issues at step five of the evaluation process, (*see id.* at 14-20).

    The Court addresses, and rejects, Plaintiff's contentions below.

    A.    The ALJ Properly Assessed Plaintiff's Credibility

    Plaintiff first contends that the ALJ improperly assessed his credibility.  (*See*

1 | Joint Stip. at 4-10.)

2 |       As a rule, an ALJ can reject a claimant's subjective complaints by

3 | "expressing clear and convincing reasons for doing so." *Benton ex rel. Benton v.*

4 | *Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  "General findings are insufficient;

5 | rather, the ALJ must identify what testimony is not credible and what evidence

6 | undermines a claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

7 | 1995) (citations omitted).

8 |       Here, the ALJ provided at least five valid reasons for rejecting Plaintiff's

9 | credibility.

10 |       First, the ALJ properly determined that Plaintiff's daily activities are

11 | inconsistent with his allegation of complete disability.  (Administrative Record

12 | ("AR") at 15-17); *see Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (an

13 | "ALJ may discredit a claimant's testimony when the claimant reports participation

14 | in everyday activities indicating capacities that are transferable to a work setting").

15 | Indeed, Plaintiff admitted that he is able to check Facebook, play computer games,

16 | play board games, watch television, cook for himself, drive, do laundry, clean, take

17 | care of his personal needs, and socialize with his neighbors.  (*Id.* at 47-49.)  He also

18 | takes care of his four sons, including making their meals and preparing them for

19 | school.[1]  (*Id.* at 48-49.)

20 |       Second, the ALJ properly relied on conflicts between Plaintiff's subjective

21 | complaints and the "relatively benign" objective medical evidence of record.  (AR

22 | at 16-18); *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)

23 | (inconsistencies with objective evidence, when combined with other factors, are

24 | valid reasons for rejecting a claimant's testimony).  The relevant medical evidence

25 | included: (1) a consultative psychiatric evaluation that showed limitations ranging

26 |

27 |       [1]  In this regard, the ALJ concluded that it appeared that Plaintiff's limited daily

28 | activities were a lifestyle choice, not an established disability.  (AR at 16.)

1   from none to mild, (2) an MRI of Plaintiff's knee showing only mild degeneration

2   and no evidence of acute fracture, dislocation, or knee effusion, (3) evidence of

3   normal walking and lack of leg swelling even after an ultrasound of Plaintiff's

4   venous right leg showed a recanalized clot, and (4) a hospital examination revealing

5   relatively normal findings even after Plaintiff reported shortness of breath and

6   coughing up blood.  (AR at 262, 273, 345, 371, 549-50.)

7        Third, the ALJ properly relied on Plaintiff's failure to follow prescribed

8   treatment by (1) failing to attend several medical appointments, (2) continuing to

9   smoke, and (3) refusing tobacco use counseling and smoking clinic referrals, despite

10  his doctor's advice.  (*Id.* at 16-18, 50, 343, 389, 394, 414, 427, 487, 526, 529, 548-

11  49, 555, 577, 583); *see Molina*, 674 F.3d at 1113-14 (ALJ did not err by discounting

12  testimony based on failure to follow prescribed treatment, including advice to seek

13  counseling); 20 C.F.R. § 404.1530(a) (claimant must "follow treatment prescribed

14  by [his] physician if this treatment can restore [his] ability to work").

15       Fourth, the ALJ properly relied on Plaintiff's routine, conservative, and non-

16  emergency treatment.  (AR at 17-18); *see Parra v. Astrue*, 481 F.3d 742, 751 (9th

17  Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a

18  claimant's testimony regarding severity of an impairment.") (citation omitted).

19  Indeed, Plaintiff was treated primarily with medication, and he often received no

20  treatment at all.  (*See* AR at 343, 389-90, 394-95, 414, 427-28, 487-88, 526, 548-49,

21  555, 577); *Hauff v. Colvin*, 2014 WL 4854712, at *7 (C.D. Cal. Sept. 30, 2014)

22  (ALJ reasonably concluded that claimant received only routine, conservative, and

23  non-emergency treatment because he was only treated with medication).

24       Fifth, the ALJ properly relied on Plaintiff's generally sporadic treatment,

25  noting in particular an approximately seven-month gap.  (AR at 19, 538-39, 571);

26  *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (in partially discrediting

27  claimant's testimony, ALJ properly relied on three- to four- month treatment gap.

28       Thus, the ALJ properly discounted Plaintiff's credibility.

1      B.      The ALJ Properly Considered the Step Five Vocational Issues

2          Plaintiff next contends that the ALJ erroneously determined at step five of his

3    evaluation, based on a Vocational Expert ("VE")'s testimony, that Plaintiff could

4    work as an order clerk, dowel inspector, or assembler.  (Joint Stip. at 15.)

5    Specifically, Plaintiff contends that the ALJ's residual functional capacity ("RFC")

6    finding that Plaintiff should avoid jobs requiring hyper-vigilance and intense

7    concentration conflicts with the Dictionary of Occupational Titles ("DOT")'s

8    descriptions of those jobs.  (*Id*.)  Additionally, Plaintiff contends that the ALJ erred

9    in relying on the VE's testimony that a certain number of jobs exist in the national

10   economy because (1) the VE did not specify the number of jobs available in each of

11   the specialty occupations within the jobs named by the ALJ, and (2) the VE's

12   statistics are "simply impossible."  (*Id.* at 15-17.)  These arguments fail for two

13   reasons.

14         1.      No Conflict Between Job Description and Plaintiff's RFC

15         First, as a matter of law, neither the DOT nor the testimony of a VE

16   "automatically 'trumps' when there is a conflict" between the two.  *Massachi v.*

17   *Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).  Instead, if a conflict *appears* to exist,

18   the ALJ must obtain a "reasonable explanation" for that conflict.  *Id.*; *see also* Soc.

19   Sec. Ruling 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).

20         Here, preliminarily, the allegedly conflicting descriptions of the order clerk

21   and dowel inspector jobs do not appear in the DOT.  *See* DOT 209.567-014; DOT

22   669.687-014.  Rather, the descriptions Plaintiff quotes are found in Plaintiff's

23   attached exhibits, and are based on the Occupational Outlook Handbook ("OOH"),

24   not the DOT.  (*See* Joint Stip. at 15; Ex. A at 4; Ex. B at 4.)  Further, contrary to

25   Plaintiff's assertion, neither the DOT nor the OOH "clearly describes [the

26   assembler] job as a fast paced assembly type occupation."  (Joint Stip. at 15; *see* Ex.

27   C); *see also* DOT 706.684-030.

28         Consequently, no inherent conflict exists between the DOT and either

4

1 | Plaintiff's RFC or the VE's testimony.

2 |               2.       <u>Step Five Challenges Not Preserved on Appeal</u>

3 |       Second, as a rule, "when claimants are represented by counsel, they must

4 | raise all issues and evidence at their administrative hearings in order to preserve

5 | them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). This is

6 | particularly true in the case of new statistical evidence, as "[t]he ALJ, rather than

7 | this Court, [is] in the optimal position to resolve the conflict between [a claimant's]

8 | new evidence and the statistical evidence provided by the VE." *Id.*

9 |       In the instant case, Plaintiff was represented by counsel at the administrative

10 | hearing and on administrative appeal, but did not raise his step five issues before the

11 | ALJ or the Appeals Counsel. (AR at 4-6, 62.)

12 |       Accordingly, the issues are waived. *See Marchbanks v. Colvin*, 2014 WL

13 | 5756932, at *1 (C.D. Cal. Nov. 4, 2014) (claimant's argument that OOH statistics

14 | conflicted with DOT and VE's testimony were waived because claimant was

15 | represented by counsel and failed to raise issue before ALJ or Appeals Council).

16 |       Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

17 | **AFFIRMING** the decision of the Commissioner denying benefits.

18 |

19 | Dated: March 16, 2015

20 |

21 | _____

22 |               Hon. Jay C. Gandhi

23 |             United States Magistrate Judge

24 |                     ***

25 | **This Memorandum Opinion and Order is not intended for publication. Nor is**

26 | **it intended to be included or submitted to any online service such as Westlaw or Lexis.**

27 |                     ***

28 |